**GLANCY PRONGAY & MURRAY LLP**
LIONEL Z. GLANCY (#134180)
ROBERT V. PRONGAY (#270796)
LESLEY F. PORTNOY (#304851)
CHARLES H. LINEHAN (#307439)
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

*Attorneys for Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KENNETH BRISTOW, Individually and On Behalf of All Others Similarly Situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |
| v. | |
| SUNPOWER CORPORATION, THOMAS H. WERNER, and CHARLES D. BOYNTON, | <u>**JURY TRIAL DEMANDED**</u> |
| Defendants. | |

Plaintiff Kenneth Bristow ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by SunPower Corporation ("SunPower" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by SunPower; and (c) review of other publicly available information concerning SunPower.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired SunPower securities between February 17, 2016, and August 9, 2016, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      SunPower is an energy company that delivers solar solutions to residential, commercial, and power plant customers.  The Company's offerings purportedly include: solar module technology and solar power systems that are designed to generate electricity over a system life typically exceeding 25 years; integrated Smart Energy software solutions; installation, construction, and ongoing maintenance, and monitoring services; and financing solutions that provide customers a variety of options for purchasing or leasing solar products.

3.      On August 9, 2016, SunPower issued a press release announcing its second quarter 2016 financial results.  Therein, the Company disclosed the existence of several factors negatively impacting the Company's performance, including "customers adopting a longer-term timeline for project completion," "aggressive [Power Purchase Agreement ("PPA")] pricing by new market entrants," and "continued market disruption in the YieldCo environment."  The Company also announced a manufacturing realignment which the Company stated would result in restructuring charges totaling $30-$45 million, a substantial portion of which would be

---

[1] "Defendants" refers collectively to SunPower, Thomas H. Werner, and Charles D. Boynton.

incurred in the third quarter of 2016. Finally, the Company disclosed that, as a result of these "challenges," it was substantially decreasing its fiscal year 2016 guidance—expecting a net loss of $175 million to $125 million, rather than the earlier-forecasted net income of $0 to $50 million.

4.      On this news, SunPower's stock price fell $4.47 per share, or 30%, to close at $10.31 per share on August 10, 2016, on unusually heavy trading volume.

5.      Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants made false and/or misleading statements and/or failed to disclose: (1) that a substantial number of the Company's customers were adopting a longer-term timeline for project completion; (2) that the Company's near-term economic returns were deteriorating due to aggressive PPA pricing by new market entrants; (3) that market disruption in the YieldCo environment was impacting the Company's assumptions related to monetizing deferred profits; (4) that, as such, demand for the Company's products was significantly declining; (5) that, in response, the Company would implement a manufacturing realignment that would result in significant restructuring charges; (6) that, as such, the Company's fiscal year 2016 guidance was overstated; and (7) that, as a result of the foregoing, Defendants' statements about SunPower's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

6.      As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

7.      The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

8.      This Court has jurisdiction over the subject matter of this action pursuant to 28

1   U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

2       9.    Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and

3   Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the

4   alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts

5   charged herein, including the dissemination of materially false and/or misleading information,

6   occurred in substantial part in this Judicial District.  In addition, SunPower's principal executive

7   offices are located within this Judicial District.

8       10.    In connection with the acts, transactions, and conduct alleged herein, Defendants

9   directly and indirectly used the means and instrumentalities of interstate commerce, including the

10   United States mail, interstate telephone communications, and the facilities of a national securities

11   exchange.

12   **PARTIES**

13       11.    Plaintiff Kenneth Bristow, as set forth in the accompanying certification,

14   incorporated by reference herein, purchased SunPower securities during the Class Period, and

15   suffered damages as a result of the federal securities law violations and false and/or misleading

16   statements and/or material omissions alleged herein.

17       12.    Defendant SunPower is a Delaware corporation with its principal executive

18   offices located at 77 Rio Robles, San Jose, California 95134.  SunPower's common stock trades

19   on the NASDAQ Stock Market ("NASDAQ") under the symbol "SPWR."

20       13.    Defendant Thomas H. Werner ("Werner") was, at all relevant times, the

21   President, Chief Executive Officer ("CEO"), and a Director of SunPower.

22       14.    Defendant Charles D. Boynton ("Boynton") was, at all relevant times, Executive

23   Vice President and Chief Financial Officer ("CFO") of SunPower.

24       15.    Defendants Werner and Boynton are collectively referred to hereinafter as the

25   "Individual Defendants."  The Individual Defendants, because of their positions with the

26   Company, possessed the power and authority to control the contents of SunPower's reports to the

27   SEC, press releases and presentations to securities analysts, money and portfolio managers and

28

institutional investors, *i.e.*, the market. Each defendant was provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading. The Individual Defendants are liable for the false statements pleaded herein, as those statements were each "group-published" information, the result of the collective actions of the Individual Defendants.

## SUBSTANTIVE ALLEGATIONS

### Background

16.     SunPower is an energy company that delivers solar solutions to residential, commercial, and power plant customers. The Company's offerings purportedly include: solar module technology and solar power systems that are designed to generate electricity over a system life typically exceeding 25 years; integrated Smart Energy software solutions; installation, construction, and ongoing maintenance, and monitoring services; and financing solutions that provide customers a variety of options for purchasing or leasing solar products.

### Materially False and Misleading
### Statements Issued During the Class Period

17.     The Class Period begins on February 17, 2016. On that day, SunPower issued a press release entitled, "SunPower Reports Fourth Quarter and Fiscal Year 2015 Results." Therein, the Company, in relevant part, stated:

> **SAN JOSE, Calif., February 17, 2016** - SunPower Corp. (NASDAQ: SPWR) today announced financial results for its fourth quarter and fiscal year ended Jan. 3, 2016.

| ($ Millions, except percentages and per-share data) | 4th Quarter 2015 | 3rd Quarter 2015 | 4th Quarter 2014 |
|---|---|---|---|
| GAAP revenue | $374.4 | $380.2 | $1,164.2 |
| GAAP gross margin | 5.4% | 16.5% | 22.3% |
| GAAP net income (loss) | $(127.6) | $(56.3) | $134.7 |
| GAAP net income (loss) per diluted share | $(0.93) | $(0.41) | $0.83 |
| Non-GAAP revenue[1] | $1,363.9 | $441.4 | $609.7 |
| Non-GAAP gross margin[1] | 28.8% | 17.7% | 20.4% |
| Non-GAAP net income[1] | $270.4 | $20.5 | $39.4 |
| Non-GAAP net income per diluted share[1] | $1.73 | $0.13 | $0.26 |
| EBITDA[1] | $379.9 | $54.2 | $84.9 |

[1] Information about SunPower's use of non-GAAP financial information is provided under "Use of Non-GAAP Financial Measures" below.

"2015 was a transformational year for the solar industry as increasing demand, favorable policy developments and broad global support for renewables created strong industry growth fundamentals. SunPower benefited from these trends as we exceeded our forecasts and closed out the year with record fourth quarter and full year non-GAAP 2015 results. During the year, we executed on our technology roadmaps, added new products and launched our joint YieldCo vehicle 8point3 Energy Partners. We are well positioned to capitalize on the continued growing adoption of solar in North America as well as key international markets such as China and Latin America. We also expanded our global power plant footprint while completing the world's largest solar power plant, located in California. In distributed generation, we made further investments in Smart Energy and launched a range of complete customer solutions for the commercial market that will significantly reduce cost while improving performance," said Tom Werner, SunPower president and CEO. "Upstream, we again delivered record output and yield while ramping our new Fab 4 cell manufacturing facility for volume production in 2016. We made strong progress on our cost reduction roadmaps and in the fourth quarter announced the launch of our new lower cost, high efficiency Performance Series product line which enhances our ability to rapidly expand SunPower's global footprint with significantly lower capital cost.

"In the power plant segment for the fourth quarter, we successfully met our project commitments, added to our pipeline and further built out our U.S. HoldCo asset base, improving visibility for drop downs to 8point3 Energy Partners in 2016. Specifically, our 135-megawatt (MW) Quinto project achieved commercial operation during the quarter and is now generating energy for 8point3 Energy Partners. Our quarterly power plant segment results benefited from strong Engineering, Procurement and Construction (EPC) execution as our 50-MW Hooper project for Xcel was completed a quarter ahead of schedule. We also commenced construction on our 100-MW project for NV Energy in Nevada and recently dedicated our second 15-MW project at Nellis Air Force base. Going forward, we see significant upside opportunity in the U.S. power plant market as the recent extension of the U.S. federal solar investment tax credit (ITC) provides

a sustainable, long term market structure to support further growth. Internationally, we continue to expand our footprint into new markets and recently announced our first project in Mexico, a 36-MW project for Aeropuertos Del Sureste (ASUR), a leading airport operator in the country. This power purchase agreement (PPA) is one of the first significant solar PPAs in Mexico and extends our position as a leader in international solar development. Construction of this project will begin this year and is expected to be completed in 2017.

"We also executed well in our residential business. In North America, our performance was solid as our fourth quarter results exceeded plan, we gained market share and broadened our leasing footprint as megawatt installed growth exceeded 45 percent year over year. Additionally, based on our fourth quarter bookings, we expect continued strong residential demand in 2016. Finally, we also expanded our utility partnership strategy during the quarter as we announced an innovative agreement with TXU Energy to bring SunPower solar solutions to the Texas market.

In our commercial segment, we are well positioned for 2016, having added projects to our backlog and building our pipeline to over $1 billion. As we announced during the quarter, we launched our Helix platform, the world's first fully-integrated solar solution for commercial customers. Designed for the rooftop, carport and commercial ground-mount markets, Helix delivers significantly lower costs and improved reliability while reducing installation times. We are currently shipping our first systems, and interest from both new and existing customers is significant. Finally, we were pleased to announce that we recently completed our first commercial project drop down to 8point3 Energy Partners. This 20-MW project for Kern County School District consists of 27 carports at various locations across the district and will be constructed in three phases with completion scheduled before the end of 2016," Werner concluded.

"Solid execution across all segments, along with the ability to leverage our development capabilities, enabled us to post record results for the fourth quarter and 2015 fiscal year," said Chuck Boynton, SunPower CFO. "Our balance sheet remains strong as we successfully executed a new convertible bond offering and recently renewed our revolver including increasing its size to $300 million. With an approximately $1 billion cash position and our undrawn revolver, we have the resources we need to continue our long term growth initiatives. Finally, we prudently managed our working capital during the quarter as we improved our performance in a number of key cash metrics while adding assets to our HoldCo base."

Fourth quarter and fiscal year 2015 GAAP and non-GAAP results reflect a charge of $33 million, or approximately 20 cents on a non-GAAP basis, related to the contracted sale, at current market based rates, of above market priced polysilicon acquired through a long term supply agreement.

Additionally, fourth quarter fiscal 2015 non-GAAP results include net adjustments that, in the aggregate, increased non-GAAP net income by $398.0 million, including $394.1 million related to 8point3 Energy Partners, $13.1 million related to utility and power plant projects, $2.0 million related to sale of operating lease assets, $16.5 million related to stock-based compensation expense, $1.7 million related to the 8point3 Energy Partners initial public offering, and $3.3 million related to other adjustments, offset by $32.7 million related to tax effect.

**Financial Outlook**

Given strong global demand as well as a favorable policy environment, the company remains very confident that it can achieve its long term strategic and financial goals by leveraging its flexible business model to drive sustainable growth. With the recent extension of the ITC, the company anticipates increasing its investment in the United States while maintaining its global go-to-market focus.

The company's fourth quarter financial results reflected a shift of approximately $65 million in EBITDA originally forecasted to be recognized in fiscal year 2016. This shift was primarily due to earlier than forecasted project completions in power plants, accelerated recognition of residential leases and earlier than anticipated benefits related to 8point3 Energy Partners. As a result of this approximately $65 million EBITDA shift, the company now expects 2016 EBITDA to be in the range of $450 million to $500 million compared to previous guidance of $515 million to $565 million. For 2017, the company believes that with the ITC extension, further investment in the U.S. market and a strong global project pipeline, it is well positioned to sustainably grow its EBITDA.

For fiscal year 2016, the company's non-GAAP expectations are as follows: revenue of $3.2 billion to $3.4 billion, gross margin of 14 percent to 16 percent, capital expenditures of $210 million to $240 million and gigawatts deployed in the range of 1.7 GW to 2.0 GW. On a GAAP basis, the company expects 2016 revenue of $2.2 billion to $2.4 billion, gross margin of 17 percent to 19 percent and net income of $0 million to $50 million. Fiscal year 2016 GAAP guidance includes the impact of the company's HoldCo strategy and deferrals due to real estate accounting.

The company's first quarter fiscal 2016 non-GAAP guidance is as follows: revenue of $290 million to $340 million, gross margin of 12 percent to 13 percent, EBITDA of $0 to $25 million and megawatts deployed in the range of 315 MW to 340 MW. On a GAAP basis, the company expects revenue of $280 million to $330 million, gross margin of 11 percent to 12 percent and net loss of $115 million to $90 million. First quarter 2016 GAAP guidance includes the impact of the company's HoldCo strategy and deferrals due to real estate accounting.

18.     On February 19, 2016, SunPower filed its Annual Report with the SEC on Form

10-K for the fiscal year ended January 3, 2016. The Company's Form 10-K was signed by Defendant Boynton, and reaffirmed the Company's financial results announced in the press release issued on February 17, 2016.

19. On May 5, 2016, the Company issued a press release entitled "SunPower Reports First Quarter 2016 Results." Therein, the Company, in relevant part, stated:

**SAN JOSE, Calif., May 5, 2016** - SunPower Corp. (NASDAQ: SPWR) today announced financial results for its first fiscal quarter ended Apr. 3, 2016.

| ($ Millions, except percentages and per-share data) | 1st Quarter 2016 | 4th Quarter 2015 | 1st Quarter 2015 |
|---|---|---|---|
| GAAP revenue | $384.9 | $374.4 | $440.9 |
| GAAP gross margin | 13.4% | 5.4% | 20.6% |
| GAAP net loss | $(85.4) | $(127.6) | $(9.6) |
| GAAP net loss per diluted share | $(0.62) | $(0.93) | $(0.07) |
| Non-GAAP revenue[1] | $433.6 | $1,363.9 | $430.6 |
| Non-GAAP gross margin[1] | 13.6% | 28.8% | 20.5% |
| Non-GAAP net income (loss)[1] | $(41.2) | $270.4 | $19.7 |
| Non-GAAP net income (loss) per diluted share[1] | $(0.30) | $1.73 | $0.13 |
| EBITDA[1] | $6.3 | $379.9 | $58.8 |

[1] Information about SunPower's use of non-GAAP financial information, including a reconciliation to U.S. GAAP, is provided under "Use of Non-GAAP Financial Measures" below.

"Our first quarter results reflect solid execution against our long term strategy," said Tom Werner, SunPower president and CEO. "With the recent launch of our Helix™ and SunPower Equinox™ complete solutions for the commercial and residential markets respectively, we are now in a position to offer standardized plug and play solutions across all primary solar applications from large scale power plants to individual homes and businesses. This positions SunPower very well to facilitate the adoption of solar power as a mainstream energy technology. In our upstream solar cell and panel manufacturing operations, we delivered strong yields and record panel output, and we continue to ramp volume at our new Fab 4 cell manufacturing facility. During the quarter, we also began commercial shipments of our new, lower cost, high efficiency Performance Series panel product line and we are on track to ramp volume significantly starting in the third quarter.

"In our power plant business, consistent with our strong, historical delivery execution, we continued construction on a number of key U.S. projects slated for completion during the second half of 2016, including our 100-megawatt (MW) project for NV Energy, the 102-MW Henrietta power plant and our 68-MW project for Stanford University. Additionally, we achieved commercial operation

on our 50-MW Hooper project for Xcel Energy, a project currently owned by 8point3 Energy Partners. SunPower also achieved notable international success during the first quarter when we were awarded approximately 500-MW of power purchase agreements in Mexico's first electricity auction. This award comprised approximately 25 percent of the awarded solar capacity, or around 20 percent of the entire awarded energy across all resources, and demonstrates the increasing cost competitiveness of wholesale solar power versus competing technologies. We also expect to begin construction of our second solar power plant project in Chile later this year with a capacity of approximately 100-MW. With a pipeline of more than 2.5 gigawatts (GW) in Latin America and more than 14-GW globally, we see significant long term opportunity in the power plant segment.

"Our residential business continued its strong performance as we met or exceeded our quarterly goals across all regions. In North America, we grew recognized megawatts by more than 50 percent year over year, gained market share, and launched our SunPower Equinox complete residential solution in the U.S. We believe this fully integrated product generates up to 70 percent more lifetime energy with 70 percent fewer visible components compared with a conventional residential system, while reducing installation time and improving quality and aesthetics. We also added a key residential channel partnership during the quarter including an exclusive co-marketing agreement with AT&T. With solid residential industry fundamentals, particularly in the U.S, we expect continued strong performance in this segment during 2016.

"We also made significant progress in our commercial business during the quarter, adding projects to our pipeline which stands over $1 billion. The rollout of our new Helix platform is going very well as we installed our first commercial system during the quarter. As a result, we expect to double our commercial market share in the U.S. this year. Internationally, we also had a significant win in Japan during the quarter, where we booked a 17-MW supply contract with a leading Japanese commercial rooftop project developer," Werner concluded.

"Overall, we executed well in the first quarter as we achieved our development targets and saw solid performance across our segments," said Chuck Boynton, SunPower CFO. "We continued to add to our HoldCo asset base with a number of large projects scheduled for completion in the second half of the year. We exited the quarter with a strong balance sheet including significant liquidity through our $300 million revolver, which remains undrawn. In addition, we were pleased to close our most recent financing, a $200 million construction revolver that will be used to finance our anticipated growth, primarily in the commercial sector."

Additionally, first quarter fiscal 2016 non-GAAP results include net adjustments that, in the aggregate, decreased non-GAAP net loss by $44.2 million, including $10.7 million related to 8point3 Energy Partners, $3.6 million related to utility and power plant projects, $3.1 million related to sale of operating lease assets, $16.5 million related to stock-based compensation expense, $8.6 million related

to other adjustments, and $1.7 million related to tax effect.

**Financial Outlook**

The company's second quarter fiscal 2016 non-GAAP guidance is as follows: revenue of $310 million to $360 million, gross margin of 12 percent to 14 percent, EBITDA of $0 to $25 million and megawatts deployed in the range of 360 MW to 385 MW. On a GAAP basis, the company expects revenue of $290 million to $340 million, gross margin of 10 percent to 12 percent and net loss of $90 million to $65 million. Second quarter 2016 GAAP guidance includes the impact of the company's HoldCo asset strategy and revenue and timing deferrals due to real estate accounting.

For fiscal year 2016, the company's non-GAAP financial guidance is unchanged. Non-GAAP expectations are as follows: revenue of $3.2 billion to $3.4 billion, gross margin of 14 percent to 16 percent, EBITDA of $450 million to $500 million, capital expenditures of $210 million to $260 million and gigawatts deployed in the range of 1.6 GW to 1.9 GW.

On a GAAP basis, the company now expects 2016 revenue of $2.8 billion to $3.0 billion, gross margin of 13 percent to 15 percent and net income of $0 million to $50 million. Fiscal year 2016 GAAP guidance includes the impact of the company's HoldCo asset strategy and revenue and timing deferrals due to real estate accounting.

20. On May 6, 2016, SunPower filed its Quarterly Report with the SEC on Form 10-Q for the fiscal quarter ended April 3, 2016. The Company's Form 10-Q was signed by Defendant Boynton, and reaffirmed the Company's financial results previously announced on May 5, 2016.

21. The above statements contained in ¶¶17-20 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, these statements were false and/or misleading statements and/or failed to disclose: (1) that a substantial number of the Company's customers were adopting a longer-term timeline for project completion; (2) that the Company's near-term economic returns were deteriorating due to aggressive PPA pricing by new market entrants; (3) that market disruption in the YieldCo environment was impacting the Company's assumptions related to monetizing deferred profits; (4) that, as such, demand for the Company's products was significantly declining; (5) that, in response, the Company would implement a manufacturing

realignment that would result in significant restructuring charges; (6) that, as such, the Company's fiscal year 2016 guidance was overstated; and (7) that, as a result of the foregoing, Defendants' statements about SunPower's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

**Disclosures at the End of the Class Period**

22.    On August 9, 2016, SunPower issued a press release announcing its second quarter 2016 financial results.  Therein, the Company identified multiple factors negatively impacting the Company's performance and forecasts for the second half of 2016:

> [W]e see a number of near-term industry challenges, primarily in our power plant segment, that we expect to impact our business and financial performance in the second half of 2016.  The extension of the Investment Tax Credit, as well as the bonus depreciation credit, while beneficial to the long-term health of the industry, has reduced the urgency to complete new solar projects by the end of 2016, with many customers adopting a longer-term timeline for project completion.  Additionally, near-term economic returns have deteriorated due to aggressive PPA pricing by new market entrants, including a number of large, global independent power companies.  We are also seeing customer project IRRs rising in the near term as buyers have increased their hurdle rates due to industry conditions.  Finally, the continued market disruption in the YieldCo environment has impacted our assumptions related to monetizing deferred profits.

In response, the Company also announced a manufacturing realignment:

> Additionally, we are realigning our manufacturing operations to increase the relative mix of X-Series capacity due to expected strong customer demand in our DG business as well as adjusting our panel assembly capacity to be closer to our core markets.  We plan to utilize equipment from some of our older solar cell manufacturing lines in Fab 2 to debottleneck capacity of our latest generation technology in order to increase the supply of X-Series panels.  These initiatives will enable us to increase X-Series output by up to 100 MW by the end of 2017.  Additionally, in connection with the realignment of our power plant segment principally around our core markets, we have made the decision to close our Philippine panel assembly facility and transfer the equipment to our latest generation, lower cost facilities in Mexico. This change will optimize our supply chain and move final panel assembly closer to our key markets.

> *      *      *

> As a result of the announced realignment, the company expects the following:

> - Workforce reduction of approximately 15 percent or 1,200 employees, primarily related to its Philippine facility closure

- Restructuring charges totaling $30-$45 million

- Substantial portion of charges to be incurred in the third quarter of 2016 with more than 50 percent of the total charges to be cash

- Annual operating expense reductions of approximately 10 percent

Finally, the Company announced that as a result of the "challenges" described above, the it was negatively revising its fiscal year 2016 guidance:

Financial Outlook

As a result of the challenges described above, the company is updating its previously disclosed fiscal year 2016 guidance, as well as providing selected forecasts for fiscal year 2017.

On a GAAP basis, the company now expects 2016 revenue of $2.8 billion to $3.0 billion, gross margin of 9.5 percent to 11.5 percent and net loss of $175 million to $125 million. Fiscal year 2016 GAAP guidance includes the impact of the company's HoldCo asset strategy and revenue and timing deferrals due to real estate accounting.

The company's updated 2016 non-GAAP financial guidance is as follows: revenue of $3.0 billion to $3.2 billion, gross margin of 10.5 percent to 12.5 percent, EBITDA of $275 million to $325 million, capital expenditures of $225 million to $245 million and gigawatts deployed in the range of 1.45 GW to 1.65 GW.

For 2017, the company expects a GAAP net loss of $200 million to $100 million and EBITDA in the range of $300 million to $400 million. The company expects that at the lower end of the guidance range, 2017 EBITDA would be generated almost entirely from the company's DG business and believes that with the announced realignment, it will be well positioned to capitalize on the long term growth potential in the global power plant market.

The company's third quarter fiscal 2016 GAAP guidance is as follows: revenue of $700 million to $800 million, gross margin of 14.5 percent to 16.5 percent and net loss of $5 million to net income of $20 million. Third quarter 2016 GAAP guidance includes the impact of the company's HoldCo asset strategy and revenue and timing deferrals due to real estate accounting. On a non-GAAP basis, the company expects revenue of $750 million to $850 million, gross margin of 16.5 percent to 18.5 percent, EBITDA of $115 million to $140 million and megawatts deployed in the range of 380 MW to 420 MW.

23.     On this news, SunPower's stock price fell $4.47 per share, or 30%, to close at $10.31 per share on August 10, 2016, on unusually heavy trading volume.

## CLASS ACTION ALLEGATIONS

24.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that acquired SunPower securities between February 17, 2016, and August 9, 2016, inclusive, and who were damaged thereby (the "Class").  Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

25.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SunPower's common stock actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class.  Millions of SunPower shares were traded publicly during the Class Period on the NASDAQ.  As of August 5, 2016, SunPower had 138,150,656 shares of common stock outstanding.  Record owners and other members of the Class may be identified from records maintained by SunPower or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

26.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

27.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

28.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the

questions of law and fact common to the Class are:

(a)   whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)   whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of SunPower; and

(c)   to what extent the members of the Class have sustained damages and the proper measure of damages.

29.   A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

30.   The market for SunPower's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, SunPower's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired SunPower's securities relying upon the integrity of the market price of the Company's securities and market information relating to SunPower, and have been damaged thereby.

31.   During the Class Period, Defendants materially misled the investing public, thereby inflating the price of SunPower's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about SunPower's business, operations, and prospects as alleged herein.

32.     At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SunPower's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects, thus causing the Company's securities to be overvalued and artificially inflated at all relevant times.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

**LOSS CAUSATION**

33.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

34.     During the Class Period, Plaintiff and the Class purchased SunPower's securities at artificially inflated prices and were damaged thereby.  The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

**SCIENTER ALLEGATIONS**

35.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.  As set forth elsewhere herein in detail, Defendants, by virtue of their

receipt of information reflecting the true facts regarding SunPower, his/her control over, and/or receipt and/or modification of SunPower's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning SunPower, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

36.     The market for SunPower's securities was open, well-developed and efficient at all relevant times.  As a result of the materially false and/or misleading statements and/or failures to disclose, SunPower's securities traded at artificially inflated prices during the Class Period.  On March 17, 2016, the Company's stock price closed at a Class Period high of $24.74 per share.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of SunPower's securities and market information relating to SunPower, and have been damaged thereby.

37.     During the Class Period, the artificial inflation of SunPower's stock was caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about SunPower's business, prospects, and operations.  These material misstatements and/or omissions created an unrealistically positive assessment of SunPower and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company stock.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

38.     At all relevant times, the market for SunPower's securities was an efficient market for the following reasons, among others:

(a)     SunPower stock met the requirements for listing, and was listed and

1   actively traded on the NASDAQ, a highly efficient and automated market;

2           (b)     As a regulated issuer, SunPower filed periodic public reports with the SEC
3   and/or the NASDAQ;

4           (c)     SunPower regularly communicated with public investors *via* established
5   market communication mechanisms, including through regular dissemination of press releases
6   on the national circuits of major newswire services and through other wide-ranging public
7   disclosures, such as communications with the financial press and other similar reporting services;
8   and/or

9           (d)     SunPower was followed by securities analysts employed by brokerage
10  firms who wrote reports about the Company, and these reports were distributed to the sales force
11  and certain customers of their respective brokerage firms.  Each of these reports was publicly
12  available and entered the public marketplace.

13          39.     As a result of the foregoing, the market for SunPower's securities promptly
14  digested current information regarding SunPower from all publicly available sources and
15  reflected such information in SunPower's stock price. Under these circumstances, all purchasers
16  of SunPower's securities during the Class Period suffered similar injury through their purchase
17  of SunPower's securities at artificially inflated prices and a presumption of reliance applies.

18          40.     A Class-wide presumption of reliance is also appropriate in this action under the
19  Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128
20  (1972), because the Class's claims are, in large part, grounded on Defendants' material
21  misstatements and/or omissions.  Because this action involves Defendants' failure to disclose
22  material adverse information regarding the Company's business operations and financial
23  prospects—information that Defendants were obligated to disclose—positive proof of reliance is
24  not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the
25  sense that a reasonable investor might have considered them important in making investment
26  decisions.  Given the importance of the Class Period material misstatements and omissions set
27  forth above, that requirement is satisfied here.

28

## NO SAFE HARBOR

41.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of SunPower who knew that the statement was false when made.

## FIRST CLAIM
### Violation of Section 10(b) of The Exchange Act and
### Rule 10b-5 Promulgated Thereunder
### Against All Defendants

42.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

43.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase SunPower's securities at artificially inflated prices.  In furtherance of this unlawful scheme, plan and course of conduct, defendants, and each of them, took the actions set forth herein.

44.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the

statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for SunPower's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.  All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

45.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about SunPower's financial well-being and prospects, as specified herein.

46.     These defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of SunPower's value and performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about SunPower and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

47.     Each of the Individual Defendants' primary liability, and controlling person liability, arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the

Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

48.     The defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing SunPower's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities.  As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

49.     As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of SunPower's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired SunPower's securities during the Class Period at artificially high prices and were damaged thereby.

50.     At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff

and the other members of the Class and the marketplace known the truth regarding the problems that SunPower was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their SunPower securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

51.     By virtue of the foregoing, Defendants have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

52.     As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

## SECOND CLAIM
### Violation of Section 20(a) of The Exchange Act
### Against the Individual Defendants

53.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

54.     The Individual Defendants acted as controlling persons of SunPower within the meaning of Section 20(a) of the Exchange Act as alleged herein.  By virtue of their high-level positions, and their ownership and contractual rights, participation in and/or awareness of the Company's operations and/or intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, the Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.  The Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

55.     In particular, each of these Defendants had direct and supervisory involvement in

1  the day-to-day operations of the Company and, therefore, is presumed to have had the power to
2  control or influence the particular transactions giving rise to the securities violations as alleged
3  herein, and exercised the same.

4       56.    As set forth above, SunPower and the Individual Defendants each violated
5  Section 10(b) and Rule 10b-5 by their acts and/or omissions as alleged in this Complaint.  By
6  virtue of their positions as controlling persons, the Individual Defendants are liable pursuant to
7  Section 20(a) of the Exchange Act.  As a direct and proximate result of Defendants' wrongful
8  conduct, Plaintiff and other members of the Class suffered damages in connection with their
9  purchases of the Company's securities during the Class Period.

10  **PRAYER FOR RELIEF**

11      WHEREFORE, Plaintiff prays for relief and judgment, as follows:

12      (a)    Determining that this action is a proper class action under Rule 23 of the Federal
13  Rules of Civil Procedure;

14      (b)    Awarding compensatory damages in favor of Plaintiff and the other Class
15  members against all defendants, jointly and severally, for all damages sustained as a result of
16  Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

17      (c)    Awarding Plaintiff and the Class their reasonable costs and expenses incurred in
18  this action, including counsel fees and expert fees; and

19      (d)    Such other and further relief as the Court may deem just and proper.

20  **JURY TRIAL DEMANDED**

21      Plaintiff hereby demands a trial by jury.

22  ///
23  ///
24  ///
25  ///
26  ///
27  ///
28

Dated:  August 16, 2016

**GLANCY PRONGAY & MURRAY LLP**

By:  *s/ Robert V. Prongay*
Lionel Z. Glancy
Robert V. Prongay
Lesley F. Portnoy
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone:  (310) 201-9150
Facsimile:  (310) 201-9160
Email:  rprongay@glancylaw.com

**LAW OFFICES OF HOWARD G. SMITH**
Howard G. Smith
3070 Bristol Pike, Suite 112
Bensalem, PA 19020
Telephone: (215) 638-4847
Facsimile: (215) 638-4867

*Attorneys for Plaintiff*

**SWORN CERTIFICATION OF PLAINTIFF**

SunPower Corp., **SECURITIES LITIGATION**

I, Kenneth Bristow, certify:

1. I have reviewed the complaint and authorized its filing.

2. I did not purchase SunPower Corp., the security that is the subject of this action at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions SunPower Corp., during the class period set forth in the Complaint are as follows:

   See Attached Transactions

5. I have not served as a representative party on behalf of a class under this title during the last three years except as stated:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

   ___ Check here if you are a current employee or former employee of the defendant Company.

   I declare under penalty of perjury that the foregoing are true and correct statements.

Dated: 8-15-16

_____
(Please Sign Your Name Above)

Street: REDACTED

City:

Zip:

Email:

**Kenneth Bristow's Transactions in**
**SunPower Corp. (SPWR)**

| Date | Transaction Type | Quantity | Unit Price |
|---|---|---|---|
| 07/18/2016 | Bought | 200 | $15.3100 |