UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE SUNPOWER CORPORATION
SECURITIES LITIGATION

Case No. 16-cv-04710-RS

**ORDER GRANTING MOTION TO DISMISS, WITH LEAVE TO AMEND**

## I. INTRODUCTION

As alleged in the operative complaint, defendant SunPower Corporation is an energy company that "delivers solar solutions to residential, commercial, and power plant customers." A "major component" of SunPower's business involves "Power Purchase Agreements" ("PPAs"), whereby SunPower contracts to build solar power plants selling electricity to commercial customers. Prior to 2016, the PPA business benefited from a government subsidy—an Investment Tax Credit ("ITC")—and a "bonus depreciation" rule that provide tax advantages to solar system owners.

The ITC and bonus depreciation rules originally were set to expire at the end of 2016. Plaintiffs allege that "the anticipated expiration of these programs created a strong incentive for both SunPower and its customers to complete contemplated transactions, including prospective Power Purchase Agreements, in 2016." Complaint, Para. 5. In November of 2015, SunPower issued optimistic financial guidance that took into account the alleged incentive to customers of

closing sales in 2016, before the ITC and bonus depreciation rules expired.

In December of 2015, however, Congress extended the ITC and the bonus depreciation rules. Plaintiffs assert this "remov[ed] the immediate incentive to complete deals in 2016." Complaint, Para. 6. Plaintiffs' theory of liability is that in February of 2016 SunPower issued full-year guidance, which remained optimistic, unduly failing to take into account the effect of a "slowdown" resulting from the extension of the ITC and the bonus depreciation program.

Because plaintiffs have not alleged sufficient facts to satisfy the heightened pleading standard applicable to actions like this under the Private Securities Reform Act of 1995, the motion to dismiss must be granted. Plaintiffs will, however, be granted leave to amend.

## II. FACTUAL ALLEGATIONS

In November of 2015, SunPower announced to analysts that the company was "back to growth." SunPower issued financial projections for the 2016 fiscal year that relied in part on an expectation that customers would rush to purchase solar systems in advance of the end-of-2016 Investment Tax Credit and bonus depreciation expiration. The company projected "non-GAAP" revenues of $3.3 billion to $3.5 billion, and GAAP revenues of $1.2 billion to $1.4 billion.

Allegedly after heavy lobbying by the solar industry, Congress renewed the ITC in December of 2015, maintaining the bonus depreciation rules in part. Although this legislation was expected to be of long term benefit to the solar industry, it removed the urgency for 2016 projects, which allegedly was fundamental to SunPower's business planning and had been factored into its 2016 guidance. Plaintiffs assert defendants were impacted by the extension immediately; a prospective customer terminated negotiations in late 2015 upon, and purportedly as a result of, the tax credit extension. In addition, plaintiffs contend, other customers began to delay negotiations in early 2016.

In February of 2016, the company issued its financial results for the 4th quarter and fiscal year 2015. While those results including recognizing $65 million originally forecasted to be part of 2016 revenues, the projections were otherwise largely unchanged. Going forward, the company

predicted non-GAAP revenues of $3.2 billion to $3.4 billion, and GAAP revenues of $2.2 billion to $2.4 billion.[1] Thus, plaintiffs assert, the February 2016 projections effectively assumed that all of the deals SunPower had previously projected would close in 2016 remained on track, even in the absence of expiring tax benefits.

Plaintiffs insist SunPower and the individual defendants were aware the extension of the tax incentives likely would result in delayed deals and reduced sales activity, particularly given that one potential transaction fell through. Plaintiffs allege analysts repeatedly challenged SunPower's assumptions, but defendants "steadfastly denied" that the ITC and bonus depreciation extensions would cause any negative impact upon 2016 sales.

In August of 2016, SunPower issued a press release announcing its second quarter financial results. While those results met or exceeded projections to date, the company downgraded its forecasts for the remainder of the year. SunPower specifically identified the ITC and bonus depreciation extensions as factors contributing to the business fall off. SunPower also pointed to various other pressures, including "aggressive PPA pricing by new market entrants." On the news, SunPower's stock price fell by 30% "on unusually heavy trading volume." Complaint, para. 10.

### III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550

---

[1] There is no explanation in the complaint or the briefing for the $1 billion discrepancy between the November 2015 GAAP projections and the February 2016 numbers. It may be that one set of numbers reflects typographical errors. For purposes of this motion, any such inadvertent error is not dispositive. The parties are in agreement that the actual November 2015 and February 2016 projections were not far apart.

US 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Claims grounded in fraud are also subject to Rule 9(b), which provides that "[i]n allegations of fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy that rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 US at 570). "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 US at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true)). In actions governed by the Private Securities Litigation Reform Act, such as this one, these general standards are subject to further refinement, as elaborated below.

IV. DISCUSSION

Under the PSLRA, to allege falsity a complaint must, "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, . . . state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc*., 298 F.3d 893, 895 (9th Cir. 2002), (quoting 15 U.S.C. § 78u-4(b)(1)) (quotation marks omitted). Furthermore, the PSLRA

expressly provides that to plead scienter, a complaint must, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). In *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007), the Supreme Court defined "strong inference," concluding that a securities fraud complaint will survive a motion to dismiss "only if a reasonable person would deem the inference of scienter *cogent and at least as compelling as* any opposing inference one could draw from the facts alleged." 127 S.Ct. at 2510 (emphasis added).

Here, the gravamen of plaintiffs' complaint is that SunPower incorrectly predicted the impact the publicly-known ITC and bonus depreciation extensions would have on its business. Plaintiffs, as they must, attempt to characterize the alleged fraud as misrepresentations of then-existing fact and/or as failures to disclose information that undermined the positive projections. Plaintiffs, however, offer no facts sufficient to transform what undeniably were forward-looking statements into actionable falsehoods. Plaintiffs plead nothing that calls into question SunPower's methodology for making financial forecasts. The fact that SunPower was aware one deal fell through is too thin a reed to support a conclusion that it could not reasonably remain optimistic that business would remain strong notwithstanding the benefit extensions.

Furthermore, even if the complaint could be read to allege falsity with sufficient factual detail and support, it falls woefully short of giving rise to a "strong inference" of scienter. Plaintiffs' confidential witnesses, who offer only generalized support for the notion that there were signs the benefit extensions were slowing the pace of new business deals, provide no basis for concluding defendants knew the company forecasts were unwarranted. Statements by defendants reflecting that they were aware of some signs of a slow down at points in time prior to the August 2016 adjusted guidance is not tantamount to an admission of wrongdoing, and does not create a strong inference of scienter.

Whether read individually or holistically, the existing allegations of the complaint suggest that defendants "got it wrong"—that the results they hoped for did not come to pass, but not that they knew the projections were groundless when made. At a very minimum, even if some

inference of possible wrongdoing could be drawn, it is outweighed by the cogent and compelling inference that this was merely an innocent failure to predict the future with complete accuracy.

## V.  CONCLUSION

The motion to dismiss is granted, with leave to amend.  Any amended complaint shall be filed within 20 days of the date of this order.

**IT IS SO ORDERED**.

Dated: April 18, 2018

_____
RICHARD SEEBORG
United States District Judge