UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

IN RE SUNPOWER CORPORATION SECURITIES LITIGATION

Case No. 16-cv-04710-RS

**ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND**

I. INTRODUCTION

Defendant SunPower Corporation is an energy company delivering solar module technology and solar power systems to residential, commercial, and power plant customers worldwide. It is in the business of entering into "Power Purchase Agreements" ("PPAs"), or contracts to build solar power plants, and then selling the corresponding electricity to commercial customers. After SunPower enters into a given PPA, it sells the contract entitling it to receive payment for the electricity to a financing partner.

In 2015, SunPower enjoyed a government subsidized Investment Tax Credit ("ITC") and a bonus depreciation rule that gave tax advantages to solar system owners. These benefits were originally going to expire at the end of 2016, and SunPower issued guidance optimistically expecting higher demand in this near-term. Against SunPower's expectations, Congress extended the ITC and bonus depreciation rules. In February 2016, SunPower issued a full-year guidance, and remained optimistic despite the extension of the ITC and bonus depreciation. Plaintiffs, individuals who purchased SunPower securities during the putative class period, aver SunPower was aware extensions to ITC and bonus depreciation would reduce 2016 sales and revenue despite their optimistic forecast, resulting in SunPower securities losing market value.

In the prior Order granting defendants' motion to dismiss, plaintiffs were given leave to amend to include sufficient factual averments on the misleading statements or misrepresentations and scienter required to proceed on their Section 10b and 20a claims under the Securities Exchange Act. This matter is appropriate for resolution without oral argument under Civil Local Rule 7-1(b). Because plaintiffs have not overcome their burden after an opportunity to amend, the motion to dismiss is granted without leave to amend.

## II. BACKGROUND[1]

### A. Factual Allegations

The facts are largely unchanged from the prior Order and begin with SunPower's November 2015 announcement that it was "back to growth" in 2016. The company issued 2016 fiscal year projections that it would experience increased solar system sales and revenue in response to the impending end of the 2016 ITC and bonus depreciation programs. SunPower Chief Financial Officer, defendant Boynton, also recognized despite the 2016 guidance that demand would decrease after the expiration of the ITC.

In December 2015, Congress renewed the ITC and maintained the bonus depreciation rules in part. Although this legislation was expected to be of long-term benefit to the solar industry, it removed the urgency for 2016 projects, which allegedly was fundamental to SunPower's business planning and 2016 guidance. Plaintiffs assert defendants were impacted by the extension immediately, after a prospective customer terminated negotiations in late 2015 due to the tax credit extension. Plaintiffs also contend other customers began to delay negotiations in early 2016.

In February 2016, SunPower issued its financial results for the fourth quarter of fiscal year 2015, and it focused on the significant long-term upside opportunity in the United States and global markets due to a favorable policy environment. SunPower omitted references to the near-term reduced demand, or how the extension was causing customers to delay closing deals.

---

[1] The factual background is based on the well-pleaded averments in the second amended class action complaint, which are taken as true for purposes of a motion to dismiss.

Plaintiffs aver analysts inquired about the negative impact of the ITC and bonus depreciation on 2016 sales, but defendants "steadfastly denied" the extensions would have a negative impact.

On August 9, 2016, SunPower issued a press release announcing its second quarter financial results and downgrading its forecasts for the rest of the year. SunPower identified the ITC and bonus depreciation extensions as factors contributing to their new forecast, as well as aggressive PPA pricing by new market entrants. In a later earnings call, SunPower's Chief Executive Officer, defendant Werner, and its Chief Financial Officer, defendant Boynton, also discussed how the ITC and depreciation rule extensions removed urgency surrounding project construction and negotiations. The market did not respond well to SunPower's new guidance and the company's stock price fell $4.47 per share, or 30 percent, on August 10, 2016.

B. Procedural Posture

Plaintiffs filed a putative class action complaint on August 16, 2016, asserting claims under Section 10(b) and Section 20(a) of the Securities Exchange Act of 1934 against SunPower and the individual defendants, Werner and Boynton. Lead plaintiff was appointed in December 2016, but withdrew a month later after deciding not to pursue this case further. After a new lead plaintiff was appointed, plaintiffs filed an amended complaint on October 17, 2017.

On April 18, 2018, defendants' motion to dismiss the amended complaint was granted. Plaintiff filed the most recent second amended class action complaint on May 8, 2018, and defendants responded with the present motion to dismiss.

III. LEGAL STANDARD

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While "detailed factual allegations are not required," a complaint must include sufficient facts to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. Claims grounded in fraud are also subject to Rule 9(b), which provides that "[i]n allegations of

fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). To satisfy that rule, a plaintiff must allege the "who, what, where, when, and how" of the charged misconduct. *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997).

A motion to dismiss a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of the claims alleged in the complaint. *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995). Dismissal under Rule 12(b)(6) may be based either on the "lack of a cognizable legal theory" or on "the absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988). When evaluating such a motion, the court must accept all material allegations in the complaint as true, even if doubtful, and construe them in the light most favorable to the non-moving party. *Twombly*, 550 U.S. at 570. "[C]onclusory allegations of law and unwarranted inferences," however, "are insufficient to defeat a motion to dismiss for failure to state a claim." *Epstein v. Wash. Energy Co.*, 83 F.3d 1136, 1140 (9th Cir. 1996); *see also Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 555 ("threadbare recitals of the elements of the cause of action, supported by mere conclusory statements," are not taken as true)). In actions governed by the Private Securities Litigation Reform Act ("PSLRA"), such as this one, these general standards are subject to further refinement, as detailed below.

IV. DISCUSSION

Under Section 10(b) of the Securities Exchange Act, and Section 20(a) as a derivative claim against the individual defendants, plaintiffs must plead: (1) a material misrepresentation or omission; (2) scienter; (3) a connection with the purchase or sale of a security; (4) reliance; (5) economic loss; and (6) loss causation. *See Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 341–42 (2005); *see also In re Daou Sys., Inc. Secs. Litig.*, 411 F.3d 1006, 1014 (9th Cir. 2005). Defendants move to dismiss the claims for failure to plead the elements of a material misrepresentation or omission, and scienter.

A. Material Misrepresentation or Omission

The PSLRA places a heightened pleading requirement on plaintiffs averring "falsity," and

complaints must, "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omissions is made on information and belief…state with particularity all facts on which that belief is formed." *Gompper v. VISX, Inc.*, 298 F.3d 893, 895 (9th Cir. 2002) (quoting 15 U.S.C. § 78u-4(b)(1)) (internal quotation marks omitted). Plaintiffs aver SunPower misrepresented the current state of demand when it made purportedly "false" statements about its projects. According to plaintiffs, SunPower was aware of the falsity of its statements because immediately after the extensions one customer cancelled negotiations on a PPA, and SunPower had to find replacement customers on "a number of other projects." Second Amended Complaint ("SAC") ¶¶ 58, 60, 62, 64, 67, 69, 73. Although plaintiffs insist the SAC is different from the previous complaint, the gravamen of the complaint is still that SunPower made a bad prediction about the effect of the ITC and bonus depreciation and misled investors by not realizing and informing plaintiffs about possible setbacks. Plaintiffs' redoubled efforts to aver a material misrepresentation or omission fail for three reasons.

First, most of the challenged statements announce SunPower's long term market growth prospects after the tax benefits were extended and thus relate to future expectations. *See, e.g.*, SAC ¶ 57 ("the recent extension of the U.S. federal solar investment tax credit (ITC) provides a sustainable, long term market structure to support further growth…the company remains very confident that it can achieve its long term strategic and financial goals."); ¶ 59 ("we remain confident in achieving our long-term strategic and financial goals."); ¶ 63 (discussing the ITC as one of several "recent developments that contributed to a favorable policy environment…[that] will strengthen demand for our products."); ¶ 68 (discussing tax equity in the residential market and predicting, "We'll probably close one more [deal] this year."); ¶ 72 ("we believe that our key growth areas will be…").

The PSLRA safe harbor protects projections of future performance and "the assumptions underlying or relating to" such projections if they are "accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from

those in the forward-looking statement." 15 U.S.C. § 78u-5(i)(1)(D); 15 U.S.C. § 78u-5(c)(1). Here, SunPower identified statements as forward-looking and accompanied them with cautionary statements or a discussion of certain risk factors. *See, e.g.*, RJN Ex. 1 at 16–47 (comprehensive discussion of the risks associated with their business); Ex. 4 at 8 (forward-looking statement risk disclosure); Ex. 5 at 3 (disclosing risks associated with forward-looking statements on February 17, 2016 earnings call); Ex. 6 at 2 (disclosing risks associated with forward-looking statements in February 17, 2016 slide deck); Ex. 11 at 2 (disclosing risks associated with forward-looking statements in May 5, 2016 slide deck).[2]

Plaintiff contends these statements were about then current facts that are not entitled to the safe harbor, since the first buyer terminated negotiations in December 2015 after the tax benefit extension. The statements at issue here are not like those in *In re Quality Sys., Inc. Sec. Litig.*, 865 F.3d 1130, 1143 (9th Cir. 2017), however, which announced growth potential after significant business decline had already taken place and was evident to the company at the time. Rather, "examined as a whole . . . [they] relate[] to future expectations and performance." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1059 (9th Cir. 2014). The failure of one negotiation because of the tax benefit extensions would not be enough to foreclose an optimistic outlook that business could remain strong. Everyone knew the tax benefits were extended and would have some effect, that alone does not mean SunPower could not maintain optimistic projections while

---

[2] SunPower filed a notice of incorporation by reference and requests judicial notice of several SEC filings and investor call transcripts placed at issue in the complaint. Recently, the Ninth Circuit has clarified the judicial notice and incorporation by reference standard. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018). To take judicial notice of public records like SEC filings or investor call transcripts, "A court must also consider -- and identify -- which fact or facts it is noticing from such a transcript." *Id*. As for incorporation by reference, it is appropriate "if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003). Here, plaintiffs refer to all the motion to dismiss exhibits except Exhibit 9 explicitly as the ground for SunPower's false statements and scienter; they are appropriately incorporated by reference. Judicial notice is appropriate for portions of Exhibit 9 referencing the 2016 guidance revenue figures. *See* Motion to Dismiss Ex. 9 at 6, 17 (listing non-GAAP revenue and EBITDA guidance in Q2 2016). Because the remaining exhibits are incorporated by reference, the court does not consider here whether they are appropriate for judicial notice.

the effects manifested. Thus, the statements are protected by the PSLRA's safe harbor.

Second, even without the PSLRA's safe harbor, most of the statements are non-specific and non-actionable puffery. For instance, plaintiff cites statements like "there's very strong demand for our projects," SAC ¶ 61, "We have this strong demand for our projects from third-party buyers," SAC ¶ 65, "There is very, very strong demand…there is very, very strong demand for our commercial business," SAC ¶ 68. These vague, general statements of optimistic demand are non-actionable puffery. *See In re Cutera Securities Litigation*, 610 F.3d 1103, 1111 (9th Cir. 2010) ("When valuing corporations, however, investors do not rely on vague statements of optimism like 'good,' 'well-regarded,' or other feel good monikers. This mildly optimistic, subjective assessment hardly amounts to a securities violation."). In the context averred by plaintiffs, accepting that SunPower lost one buyer and was scrambling to close deals, the statements still fail to rise to more than opinions about SunPower's potential to close deals despite the tax benefit extensions. There are no averments suggesting why SunPower could not reasonably stay optimistic that it would meet expectations for the year even with immediate fallout after the ITC and bonus depreciation extension.

Finally, even if the statements were actionable, the averments do not sufficiently assert actual falsity when the statements were made. The single lost PPA negotiation and SunPower's search for replacement buyers are not substantial enough to conclude optimistic statements the business would remain strong were false at the time. After all, SunPower did manage to find replacements. *See* SAC ¶ 78 (recognizing the deals were eventually made and "projects actually booked."). The August 9, 2016 press release and earnings call at the end of the class period announced several factors negatively affecting SunPower's performance in the second quarter of 2016 and explained why it was negatively revising the company's 2016 guidance. *See* SAC ¶¶ 74–75. There are not sufficient averments, however, that the statements made in August were actually false at the beginning of the putative class period in February.

Looking at the August 2016 press release, it is clear the realization that 2016 second quarter performance was negatively affected by the extension was not immediate. *See* SAC ¶ 78; *see also*

ORDER GRANTING MOTION TO DISMISS WITHOUT LEAVE TO AMEND
CASE NO. 16-cv-04710-RS

7

RJN Ex. 7 at 10 ("And as we got into April, the third week of April, SunEdison went bankrupt…when we were selling projects in the *last few months*, the buyer universe had materially digested these changes and their perceived risk.") (emphasis added). Rather, SunPower continued to meet its guidance even with SunEdison's bankruptcy in April, with negotiations ending and finding replacements, and with a buyer market realizing a higher perceived risk several months after the extensions were announced. Plaintiffs still have "plead[ed] nothing that calls into question SunPower's methodology for making financial forecasts" either when the statements were made or in its disclosures at the close of the class period. *See* Order at 5 (Dkt. No. 97).

B. Scienter

Assuming for the sake of argument plaintiffs averred falsity, they do not satisfy the PLSRA's scienter requirement. To plead scienter a complaint must, "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." 15 U.S.C. §78u-4(b)(2) (emphasis added). The complaint must contend the defendants "made false or misleading statements either intentionally or with deliberate recklessness." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1015 (9th Cir. 2005) (citing *In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 974 (9th Cir. 1999)). The statements, however, satisfy the "strong inference" in a securities fraud complaint "only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

Here, the plaintiffs' complaint contends scienter is inferred from the knowledge that Werner and Boynton had when one major customer cancelled PPA negotiations in December 2015 after the ITC was extended, which they discussed in the earnings call on August 10, 2016. *See* SAC ¶ 86. In essence, these are the same averments in the prior complaint. Plaintiffs are averring defendants made overly optimistic estimates of SunPower's near-term sales and revenue when they had information to the contrary. Yet being aware of some signs there might be a slowdown in business is not an admission that SunPower or its control-persons intentionally or knowingly made false statements. The confidential witnesses offered in the complaint provide no basis for

concluding SunPower knew its optimistic forecasts were unwarranted when the statements were made as early as February 2016.

While plaintiffs are trying to argue that SunPower was aware of the decreased demand for solar projects when they were offering generally optimistic public statements, an equally plausible inference is that SunPower management was not yet experiencing the effects of that decrease. As the Form 8-K from August 2016 and judicially noticed Form 8-K from May 2016 show, SunPower continued to meet or exceed its revenues and EBITDA guidance in the first two quarters of 2016 even as it announced downgraded expectations in the second half of 2016. *Compare* Mot. to Dismiss Ex. 9 (listing Q2 2016 guidance non-GAAP revenue as $310-$360 million), *with* Ex. 10 (listing reported Q2 2016 non-GAAP revenue of $401.8 million). A single buyer adversely responding to the tax benefit extensions would not have made SunPower cognizant of an immediate and sustained decrease in demand. Another plausible inference is perhaps SunPower management believed in its ability to close existing deals. If the deals are simply harder to close because of the tax benefit extensions, that is not particularly new information the public would not have been aware of. There were also reasons to believe that – as recognized by plaintiffs – the global policy environment would still fuel demand and favor long-term growth. The averments in the complaint do not support a strong inference the defendants knew their projections or guidance were groundless when made.

## V. CONCLUSION

For the foregoing reasons, the motion to dismiss is granted without leave to amend.

**IT IS SO ORDERED**.

Dated: October 9, 2018

_____
RICHARD SEEBORG
United States District Judge